

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00454-CR

THOMAS GEORGE CRAAYBEEK                    APPELLANT

V.

THE STATE OF TEXAS                                    STATE

----------

### FROM THE 90TH DISTRICT COURT OF YOUNG COUNTY
### TRIAL COURT NO. 10573

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

A jury convicted Appellant Thomas George Craaybeek of aggravated assault by threat on a public servant and assessed his punishment at life imprisonment; the trial court sentenced him accordingly. Appellant raises four issues: two alleging charge error based upon an incorrect definition of

---

[1]See Tex. R. App. P. 47.4.

"knowingly" and two alleging error at the punishment phase of trial by the exclusion of evidence that Appellant contends constituted mitigation evidence. Because Appellant did not suffer egregious harm from the unobjected-to charge error and because the trial court did not err by excluding the evidence that Appellant contends constituted mitigation evidence, we will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On November 28, 2014, at approximately 6 p.m., police received a 9-1-1 call that Appellant had shot his wife in their home. State Trooper James Lattimore responded to a dispatch issued by the Young County Sheriff's Department and drove his marked patrol vehicle to Appellant's home. Trooper Lattimore testified that he activated the vehicle's overhead red and blue lights as well as his flashing white lights and that he was wearing his uniform. He described the lights as very distinctive and very bright. An Olney Police Officer in a marked patrol car was also at the scene; after discussing the situation, Trooper Lattimore and the Olney police officer decided to wait for officers from the Young County Sherriff's Department to arrive. While they were waiting, multiple gunshots were fired from the carport area of Appellant's home. Trooper Lattimore heard "the snap" of bullets going by his head in rapid succession. After Young County Sheriff's Deputies arrived, "continual" volleys of gunfire erupted from various locations. Trooper Lattimore described the shots as "going right by us." After negotiations, Appellant eventually surrendered. Captain Tim Bay with the Young County Sheriff's Department testified that he believed Appellant had

2

not been trying to kill anyone but had merely intended to "pin them down" and had only wanted to keep the officers off of his property.

The State indicted Appellant for aggravated assault by threat on a public servant.[2] The indictment alleged that Appellant had

> intentionally and knowingly threaten[ed] James Lattimore with imminent bodily injury by shooting at him, and did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of said assault, and the [Appellant] did then and there know that the said James Lattimore was then and there a public servant, to-wit: Texas Department of Public Safety Trooper . . . .

### III. APPELLANT'S JURY-CHARGE ISSUES

In his first issue, Appellant asserts that in the "Definitions" section of the court's charge, "knowingly" is incorrectly defined thereby permitting the jury to convict him on a basis not alleged in the indictment. In his second issue, he contends that the grammatical and typographical errors contained in the definition of "knowingly" misled and confused the jury, which again permitted the jury to convict him on a basis not alleged in the indictment.

The abstract portion of the charge on guilt-innocence, under a bolded heading titled, "Definitions," stated:

> 3. A person acts knowingly or with knowledge, with respect to the nature of his conduct [when he is aware of the nature of his conduct] or to circumstances surrounding his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct *when he is aware that his conduct* is reasonably certain to cause the result. [Emphasis added.]

---

[2]*See* Tex. Penal Code Ann. § 22.02(b)(2)(B) (West 2011).

3

This definition of "knowingly" is a garbled version of the definition provided in the penal code. *See* Tex. Penal Code Ann. § 6.03(b) (West 2011). The bracketed portion of the above definition shows what was erroneously left out. The italicized portion shows what was erroneously inserted.[3] Appellant did not object to the charge at trial.

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *Id.* If error occurred, whether it was preserved determines the degree of harm required for reversal. *Id.* Unpreserved charge error warrants reversal only when the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006). The appropriate inquiry for egregious harm is fact specific and must be performed on

---

[3]The definition should read:

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

*Id.*

4

a case-by-case basis. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

In making an egregious harm determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. *See generally Gelinas*, 398 S.W.3d at 708–10 (applying *Almanza*). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

We address each of the four factors articulated in *Almanza*. *See id.* at 171; *Valencia v. State*, No. 02-14-00406-CR, 2015 WL 7820384, at *3 (Tex. App.—Fort Worth Dec. 3, 2015, no pet.) (mem. op., not designated for publication). We review the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information revealed by the trial record as a whole. *Almanza*, 686 S.W.2d at 171.

Looking to the entirety of the court's charge, the application paragraph provides:

You must decide whether the [S]tate has proved, beyond a reasonable doubt, five elements. The elements are that—

1. the defendant, Thomas George Craaybeek, in Young County, Texas, on or about 28th day November, 2014,

2. intentionally or knowingly threaten[ed] James Lattimore with imminent bodily injury by shooting at him,

3. and did then and there use or exhibit a deadly weapon, to wit: a firearm, during the commission of said assault, and

4. the defendant did then and there know that the said James Lattimore was then and there a public servant, to wit: Texas Department of Public Safety Trooper, and

5. that the said James Lattimore was then and there lawfully discharging an official duty, to wit: responding to a report of a gunshot victim.

Appellant concedes that the application paragraph correctly applies the law. Where the application paragraph correctly applies the law, Appellant cannot show egregious harm. *See Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999) ("Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious."), *cert. denied*, 529 U.S. 1102 (2000); *Anaya v. State*, 381 S.W.3d 660, 666 (Tex. App.—Amarillo 2012, pet. ref'd) (same); *see also Urquiza v. State*, No. 08-08-00016-CR, 2010 WL 1230664, at *2 (Tex. App.—El Paso Mar. 31, 2010, no pet.) (mem. op., not designated for publication) (same); *Coleman v. State*, No. 08-05-00258-CR, 2007 WL 853116, at *4 (Tex. App.—El Paso Mar. 22, 2007, no pet.) (mem. op., not designated for publication) (same). Because the plain language of the jury instructions contained in the application paragraph correctly instructed the jury on the law as

6

applied to Appellant, the first *Almanza* factor favors a finding that the error was not egregious.

Looking to the state of the evidence, no evidence exists that Appellant ever actually wounded Trooper Lattimore; Appellant shot at Trooper Lattimore. The evidence established, therefore, that the aggravated-assault-by-threat-on-a-public-servant offense Appellant was charged with was based on the nature of Appellant's conduct and not on the result of his conduct, thus minimizing any harm stemming from the "result-of-offense" language erroneously included in the charge's definition of knowingly. Regarding Appellant's "nature-of-the-offense" knowledge that he was shooting at a public servant, Trooper Lattimore testified that he arrived at Appellant's home in uniform in a marked patrol vehicle with his overhead red and blue lights, as well as his flashing white lights, activated. The state of the evidence is such that it supports the jury's conclusion that Appellant knew he was shooting at a public servant and makes it unlikely that the garbled definition of knowingly prevented the jury from accurately implementing the commands of the application paragraph.

Looking to the arguments of counsel, during closing argument the prosecutor stated: "We have proved to you beyond a reasonable doubt every single element in that offense. He intentionally and knowingly threatened bodily injury." The prosecutor continued, "The actor knows the person is a public servant. Obviously he knew these were officers. He said so in his interviews." Accordingly, the State stressed that Appellant's offense was a nature-of-conduct

7

offense. The prosecutor's argument was consistent with the charged offense and with the application paragraph, and diminished the likelihood that Appellant was harmed by the erroneous definition of knowingly set forth in the "Definitions" portion of the charge. If anything, the prosecutor's arguments clarified any confusion the definition might have caused.

Looking to other relevant information revealed by the record as a whole, during voir dire, the prosecutor explained:

> This is what we have to prove. . . .
>
> First that the defendant -- so we need to bring in evidence identifying the defendant.
>
> -- on or about a certain date -- we'll give you the date of the offense.
>
> -- in Young County, Texas -- that's the location.
>
> -- intentionally or knowingly -- and that's essentially just knowing whether or not the person appreciated the nature of their conduct. Did they know what they were doing.
>
> -- threaten a public servant with imminent bodily injury -- and a public servant can be a peace officer as long as they work for a governmental entity like a municipality or the city or the county or the state.
>
> -- and used or exhibited a deadly weapon during the commission of said offense.

From the outset of trial, the State framed Appellant's offense as a nature-of-conduct offense and explained that to be guilty, Appellant had to have known he was threatening a public servant. Thus, the record as a whole does not show any potential that the erroneous definition of knowingly contained in the charge

8

dovetailed in any way with other occurrences at trial that would increase the impact of the charge's erroneous definition of knowingly.

Having examined the four *Almanza* factors and having concluded that none of them weigh in favor of egregious harm, we hold that the erroneous definition of knowingly did not deprive Appellant of a valuable right, vitally affect his defensive theory, or make the case for conviction clearly and significantly more persuasive. *See Almanza*, 686 S.W.2d at 171; *Taylor*, 332 S.W.3d at 490. Because Appellant has not shown egregious harm, we overrule his first and second issues.

## IV. APPELLANT'S ISSUES CHALLENGING THE EXCLUSION OF EVIDENCE AT PUNISHMENT

In his third and fourth issues, Appellant argues that that trial court abused its discretion by excluding the testimony of Steve Richie, a licensed chemical dependency counselor. Outside the presence of the jury, Appellant proffered Richie's "expert" testimony on "blackouts as they relate to alcohol abuse" for mitigation purposes at the punishment phase of trial. Appellant claims that the trial court abused its discretion by excluding Richie's testimony on the ground that Richie was not "qualified to go into (blackouts)"—issue three—and on the ground that it did not "meet the criteria for . . . diminished capacity"—issue four.

Richie testified outside the presence of the jury that he was in court to offer testimony about blackouts as they relate to alcohol and drug abuse. By blackouts, he meant "no memory of what took place when [the defendant was]

9

under the influence of drugs or alcohol or both." He added that blackouts kept "short-term memory from being filed as long term."

Appellant argues evidence exists that he had taken prescription medications and consumed large amounts of alcohol and that his memory problems might be explained by blackouts. Appellant claims that Richie's testimony was relevant because during a video-recorded interview with Captain Bay, which was played for the jury at guilt-innocence, Appellant repeatedly professed not to remember what had happened. Appellant points out that when Captain Bay testified at guilt-innocence, he described Appellant as deceitful; Captain Bay testified, "I don't believe for one minute he wasn't recalling. He was just wanting to hide the fact of whatever . . . however you want to say it, admitting, confessing, to whatever took place."

After hearing Richie's testimony outside the present of the jury, the trial court indicated that although Richie's testimony might be relevant to Appellant's mens rea and to the issue of guilt, because the jury had already decided guilt, Richie's testimony would confuse the jury. The trial court denied Appellant's request to present Richie's testimony to the jury at punishment.

An appellate court reviews a trial court's exclusion of evidence for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). An abuse of discretion is established "only when the trial judge's decision was so clearly wrong as to lie outside that zone within which

reasonable persons might disagree." *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992), *cert. denied*, 509 U.S. 926 (1993).

Here, even assuming—as Appellant asserts in his third issue—that Richie was qualified to testify as an expert, Appellant proffered Richie's testimony concerning blackouts as related to alcohol abuse to explain Appellant's initial lack of memory concerning the events on the evening of the offense—as reflected in the video of Appellant's interview with law enforcement that was admitted into evidence at guilt-innocence.[4] Richie's testimony was therefore not proper mitigation evidence. *See* Tex. Penal Code Ann. § 8.04(b); Tex. R. Evid. 402; *Howard*, 239 S.W.3d at 365 ("[I]t is well settled that lack of memory is not the same thing as intoxication; thus, evidence showing loss of memory is not sufficient to require an instruction on temporary insanity." (quoting *Reyna v. State,* 11 S.W.3d 401, 403 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd))). Because Richie's testimony concerning blackouts as related to alcohol abuse

---

[4]Appellant did not proffer Richie's testimony to establish temporary insanity by reason of intoxication. Evidence of temporary insanity caused by intoxication may be introduced to mitigate the punishment imposed for an offense. *See* Tex. Penal Code Ann. § 8.04 (West 2011). Courts must submit a mitigating instruction on temporary insanity by intoxication only if the evidence tends to show the intoxication caused temporary insanity in the defendant. *Arnold v. State*, 742 S.W.2d 10, 13 (Tex. Crim. App. 1987). To raise the issue of temporary insanity by intoxication, the evidence must tend to show both that the defendant was intoxicated and that his intoxication caused him (1) not to know his conduct was wrong or (2) to be incapable of conforming his conduct to the requirements of the law he violated. *Id.* That evidence is not present here. Lack of memory is not the same thing as intoxication; therefore, evidence showing a loss of memory is insufficient to require an instruction on temporary insanity. *Howard v. State*, 239 S.W.3d 359, 365 (Tex. App.—San Antonio 2007, pet. ref'd).

was not admissible as mitigation evidence in this case, we hold that the trial court did not abuse its discretion by excluding Richie's testimony.[5]   We overrule Appellant's fourth issue.[6]

## V. CONCLUSION

Having overruled Appellant's dispositive issues, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and SUDDERTH, JJ.

SUDDERTH, J., concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 26, 2016

---

[5]To the extent Appellant offered Richie's testimony to mitigate prejudice stemming from a belief by the jury that he had lied during his interview with Captain Bay about not remembering what had happened, Appellant was attempting to show he was telling the truth about not remembering based upon an alcohol- or drug-induced blackout.  Appellant's proffered testimony was an improper attempt to offer extrinsic evidence to support his character for truthfulness.  See Tex. R. Evid. 608(b) ("A Witness's Character for Truthfulness or Untruthfulness").

[6]Having determined that Richie's proffered testimony was not admissible as mitigation evidence, we need not address Appellant's third issue challenging an additional ground stated by the trial court for the exclusion of Richie's testimony—that Richie was not qualified under rule 702.  See Tex. R. App. P. 47.1 (requiring appellate court to address issues necessary for final disposition of appeal).